UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EUGENE D. CARPER, | Case No. C07-571-JLR-JPD |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

I.       INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Eugene Carper is a former inmate at the Monroe Correctional Center ("MCC"), a prison operated by the Washington State Department of Corrections ("DOC"). Plaintiff is proceeding *pro se* in this 42 U.S.C. § 1983 civil rights action against the DOC and several DOC health care providers. Specifically, plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment, and that the defendants failed to meet the standard of care for health care providers under Washington law. This matter comes before the Court on the defendants' motion for summary judgment. Dkt. 81. The Court, having considered the

defendants' motion for summary judgment, plaintiff's response, the governing law, and the balance of the record, recommends that the defendants' motion, Dkt. 81, be GRANTED, and this case be DISMISSED with prejudice as to plaintiff's Eighth Amendment claims and without prejudice as to plaintiff's medical malpractice claims.

## II.     JURISDICTION

This Court has federal question jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1983. *See* 28 U.S.C. § 1331. The Court also has jurisdiction over all the parties in this case, as they are residents of Washington. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). The Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## III.     BACKGROUND

A.     Factual Background

Plaintiff's amended complaint seeks monetary, declaratory, and injunctive relief against the DOC, as well as several DOC employees, for deliberate indifference to his medical needs between October 2002 and August 2004.[1] Dkt. 6 at 4-13. Specifically, defendant Nurse M. Lynema performed an intake examination of plaintiff at the Washington Corrections Center ("WCC") following his arrest in October 2002. *See id*. at 5, 17. Defendants Dr. J. David Kenney, Dr. James Champoux, physicians assistant ("PA") Patrick Barnes, and PA Tim

---

[1] As a threshold matter, the Court notes that plaintiff's claims for injunctive relief became moot upon his release from prison during this litigation. As a general rule, a prisoner's transfer or release will moot all personal claims for injunctive relief because the prisoner is no longer subject to the allegedly unconstitutional conduct or policy. *Preiser v. Newkirk*, 422 U.S. 395, 402-03; *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991).

Cristman treated plaintiff for various ailments during his incarceration at the MCC Twin Rivers Unit.[2]

Plaintiff's most serious medical problems during his incarceration were his gastrointestinal problems, including ulcers. Dkt. 6 at 2-3, 6-18; Dkt. 81 at 3. However, plaintiff's medical problems also included migraine headaches, lower back pain, and hammer or claw toes. *See id.*

Although plaintiff has received medical treatment on many occasions by numerous physicians and medical providers during his incarceration, he alleges that the medical care he received was, as a whole, constitutionally insufficient.[3] The specific instances of inadequate medical care alleged in the plaintiff's complaint include: (1) being placed in a non-medical cell and being forced to lay on the floor on the day of his October 14, 2002 arrest; (2) being prescribed ibuprofen and aspirin at various occasions between October 14, 2002 and September 19, 2003, despite the severe stomach pain it caused; (3) being denied treatment by physicians assistant Barnes from November 12, 2002 to January 2, 2003; (4) being denied x-ray or diagnostic imaging report examinations from February 2003 until March 24, 2003; (5) being denied treatment for back pain between March 24, 2003 and May 16, 2003; and (6) being mistreated and improperly medicated in general throughout this time, which led to continued pain and suffering, and ultimately, a March 19, 2004 conclusion by Dr. Friedrich that a combination of Naprosyn, Prilosec, and other non-steroidal anti-inflammatory medications

---

[2] In plaintiff's complaint, he also named Whatcom County Jail and DOC Nurse Dean Wable as defendants. Dkt. 6 at 2-3. However, Whatcom County Jail was previously dismissed from this lawsuit, and that dismissal was upheld on appeal. *See* Dkt. 42 at 9; Dkt. 65; Dkt. 70. In addition, Mr. Wable was not properly served or made a party to this case. *See* Dkt. 12; Dkt. 26 at 1 fn.1.

[3] Indeed, plaintiff's amended complaint catalogues no fewer than thirty-three visits to a physician or other medical provider between 2002 and 2006. Dkt. 6 at 4-15.

("NSAIDS") prescribed for plaintiff had caused him to suffer a duodenal ulcer, which would ultimately require surgery in August 2004. Dkt. 6 at 4-13.

The parties in this case primarily disagree regarding whether the medications prescribed for plaintiff by the defendants clearly caused his ulcer, and even if they did, whether the defendants acted with deliberate indifference to plaintiff's serious medical needs when they prescribed the medications. Defendants assert that when plaintiff first experienced vomiting and nausea in late 2003 and early 2004, his condition "was initially treated conservatively, however, when this condition persisted, diagnostic testing was done in March 2004 by outside medical providers which showed that Mr. Carper had a peptic ulcer and gastric outlet obstruction possibly associated with the ulcer." Dkt. 81 at 3. *See also* Dkt. 81, Ex. 2 (Kenney Decl.). Specifically, Dr. Loura Freidrich of the Providence Medical Center in Everett, Washington, performed an esophagogastroduodenoscopy ("EGD") on plaintiff on March 16, 2004, to visually evaluate the condition of plaintiff's upper gastrointestinal tract. *See* Dkt. 6 at 13; Dkt. 26 at 12; Dkt. 81, Ex. 2 at 2 (Kenney Decl.). Dr. Freidrich found that plaintiff's esophagus was normal, but within plaintiff's "pylorus was a discrete, large, at least 1 cm plus size deep ulcer. Some old food was in the stomach." Dkt. 81, Ex. 1, Att. A (Dr. Friedrich's Marc 16, 2004 report).

Plaintiff alleges that Dr. Freidrich filed a report dated March 19, 2004, which concluded that "medications prescribed to plaintiff by defendants, including prescriptions for Naprosyn, and Prilosec, in conjunction with NSAIDS, caused plaintiff to suffer duodenal ulcers. Dr. Freidrich also determined that she needed to continue to examine plaintiff on a regular basis as it was her prognosis that plaintiff may need ulcer surgery." Dkt. 6 at 13. Defendant Dr. Kenney responds, however, that "Mr. Carper incorrectly interprets the medical documentation and significance of the findings," because "the March 19, 2004 'report' Mr. Carper is referring to in his complaint is

actually a letter dated March 19, 2004 sent by Dr. W. Michael McDonnell, a gastroenterologist and internist, to Physician's Assistant Patrick Barnes. This letter refers to the results of the EGD done by Dr. Loura on March 16, 2004." *Id*. at 3. Specifically, Dr. McDonnell stated in the letter that "[i]t is my hope that the NSAIDS caused the duodenal ulcer which caused the gastric outlet obstruction. This should heal very nicely by stopping [plaintiff's] Naprosyn and taking Prisolec 40mg twice a day as he is doing." Dkt. 81, Ex. 1, Att. B (Dr. McDonnell's letter). Dr. Kenney asserts that contrary to plaintiff's contention, "this statement by Dr. McDonnell is not a finding that NSAIDs caused Dr. Carper's ulcer, nor is it an opinion or conclusion that prescribing prilosec, naprosyn, aspirin, ibuprofen, or any other NSAID for Mr. Carper was improper or contrary to the accepted standard of care. The potential to cause an ulcer, such as the ulcer Mr. Carper had, is a well appreciated potential side effect of NSAID treatment." Dkt. 81, Ex. 2 at 3 (Kenney Decl.).

When plaintiff's gastrointestinal condition did not resolve satisfactorily with conservative treatment, he was taken to Valley General Hospital in Monroe, Washington, where corrective surgery was performed by Michael Eickerman, M.D., in early August 2004. *Id*. at 2. Following the surgery, between January and October 2005, plaintiff continued to receive treatment for back pain, gastric pain, nausea, diarrhea, and dumping syndrome. *See* Dkt. 6 at 14. Defendants assert that plaintiff's surgery was successful, and that plaintiff's digestive complaints "represent known consequences of the surgical procedure." Dkt. 81, Ex. 2 at 2 (Kenney Decl.). Moreover, defendants argue that throughout plaintiff's incarceration at MCC he has received extensive diagnostic testing to define and evaluate his various medical issues, as well as "numerous consultations with outside medical providers . . . to address his back problems, his stomach

problems and to treat other medical issues such as the surgical removal of a paper clip from his

urethra." *Id*. at 4.

B.    Procedural History

Plaintiff initiated the instant § 1983 action on April 19, 2007.  Dkt. 1.  On June 27, 2007,

this Court declined to serve plaintiff's complaint due to several specified deficiencies.  Dkt. 13.

After receiving a lengthy extension of time to correct these deficiencies and file a new complaint,

plaintiff filed his amended complaint on August 27, 2007.  Dkt. 6.  Seven days later, the Court

directed service of plaintiff's amended complaint.

Defendant Whatcom County Jail filed a motion to dismiss on September 20, 2007,

alleging that plaintiff has failed to state a claim upon which relief can be granted as to Whatcom

County Jail.  Dkt. 16.  Defendants Nurse Lymena, the DOC, Patrick Barnes, Tim Cristman, J.

David Kenney, and James Champoux filed an answer to the amended complaint on November 5,

2007, Dkt. 26, and a motion to dismiss on November 15, 2007, alleging that plaintiff's cause of

action under § 1983 was barred by the three-year limitation of Wash. Rev. Code. § 4.16.080(2)

because "the allegations attributed to defendants occurred prior to August 24, 2004" and

plaintiff's complaint was not filed until April 2007.  Dkt. 27 at 3 (citing Dkt. 6 at 14-15).  On

April 7, 2008, this Court granted Whatcom County Jail's motion to dismiss and the remaining

defendants' motion for judgment on the pleadings.  Dkt. 42; Dkt. 46.

On January 22, 2010, the Ninth Circuit Court of Appeals vacated the Court's decision in

part, finding that, based on an argument raised for the first time on appeal, plaintiff's claims with

respect to the defendants other than Whatcom County Jail were not time-barred because they

were tolled during the pendency of his administrative appeals.  Dkt. 65.  Specifically, the Ninth

Circuit held that "the record shows that the action against the remaining defendants was not

time-barred because Carper was entitled to tolling during the pendency of his administrative appeals." *Id.* at 2 (citing *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) (holding that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process.")).  The Ninth Circuit remanded the case to this Court for further proceedings, and issued the mandate on February 17, 2010.  Dkt. 65; Dkt. 66.

On remand, plaintiff filed a motion to compel and/or motion for extension of time for discovery.  Dkt. 71.  The Court denied plaintiff's motion to compel on the grounds that plaintiff failed to meet and confer as required by Federal Rule of Civil Procedure 37(a)(1), and granted plaintiff's alternative request for an extension of time to conduct discovery.  Dkt. 73.  Plaintiff was also granted a second extension of time to complete discovery on August 11, 2010.  Dkt. 78.

On November 24, 2010, defendants DOC, Lymena, Barnes, Kenney, Champoux, and Cristman filed the instant motion for summary judgment.  Dkt. 81.  Specifically, the DOC moves for summary judgment based on Eleventh Amendment immunity, and Lymena moves for summary judgment based on plaintiff's failure to exhaust his administrative remedies with respect to his claims against her under 42 U.S.C. § 1997e(a), or alternatively, the statute of limitations.  *See id.* at 7-10.  Defendants Barnes, Kenney, Champoux, and Cristman move for summary judgment on the merits of plaintiff's claims, as they allege that there is no competent evidence that they acted with deliberate indifference or in violation of the accepted standards of medical care in Washington.  *See id.* at 10-13.

On December 1, 2010, plaintiff filed a second motion to compel discovery and amend his complaint.  Dkt. 84.  The Court denied plaintiff's motion to compel on March 15, 2011, based upon the Court's finding that "each of the interrogatories were either fully answered by the defendants, or seek information that is either privileged or irrelevant to plaintiff's claims."  Dkt.

86 at 2.  Similarly, the Court denied plaintiff's request for leave to file an amended complaint because in granting plaintiff's request for an extension of time to conduct discovery, this Court previously denied plaintiff's alternative request to file an amended complaint and "plaintiff has made no showing in these proceedings that the defendants improperly responded to plaintiff's interrogatories, necessitating an amendment of plaintiff's complaint at this late stage of the litigation."  *Id.* at 3.  The Court directed plaintiff "to file a . . . response to the defendants' summary judgment motion, and support his response with appropriate evidence as set forth in Fed. R. Civ. P. 56(c)[.]"  *Id.*

Plaintiff filed his response to the defendants' motion on April 19, 2011.  Dkt. 87.  Plaintiff's response did not address his claims against the individual defendants in this case, but instead presented a new argument that "[h]ad DOC Policy 600.000 and/or DOC Policy 600.020 provided for Carper to use Blue Cross Insurance upon entering DOC[,] none of the stomach problems would have taken place."  Dkt. 87 at 8.  In support of his response, plaintiff provided three declarations from other inmates concerning their own medical problems and the treatment they received during their incarceration.  *Id.*, Exs. 1-3.  The defendants declined to file an optional reply brief.

On May 31, 2011, plaintiff filed a notice of change of address reflecting that he had been released from MCC.

IV.    DISCUSSION

A.    <u>Summary Judgment Standard</u>

Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

When applying these standards, the Court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party. *See United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing evidence that negates an essential element of the nonmoving party's claim, or by establishing that the nonmoving party does not have enough evidence of an essential element to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the veracity of everything offered by the moving party or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The mere existence of a scintilla of evidence in support of the plaintiff's position is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252. To avoid summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party's failure of proof concerning an essential element of its case necessarily "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 606 F.2d 1089, 1092 (9th Cir. 1980). Specifically, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state or federal law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the constitutional or statutory violations alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).

B.      Plaintiff's Claims Against the DOC Are Barred by the Eleventh Amendment

As mentioned above, plaintiff contends in his complaint that the DOC is liable for the constitutionally insufficient medical care that plaintiff received throughout his incarceration, such as numerous physicians and medical providers prescribing improper medications which ultimately caused plaintiff to suffer duodenal ulcers that required surgery. *See* Dkt. 6 at 4-13. In addition, plaintiff argues in his response to the defendants' summary judgment motion that DOC Policies 600.00 and 600.020 established a "conservative level of health care" for prison inmates that essentially required inmates like plaintiff to wait until a disease or injury becomes life-threatening before they are able to obtain medical treatment. Dkt. 87 at 8. Plaintiff contends that "[h]ad DOC Policy 600.000 and/or DOC Policy 600.020 provided for Carper to use Blue Cross Insurance upon entering DOC[,] none of the stomach problems would have taken place." *Id*. at 9. Finally, plaintiff asserts that the DOC's policies, which reflect deliberate indifference toward

his medical needs, "stopped him from receiving the degree of care that he needed." *Id.* at 8.[4]

Defendants contend that plaintiff's claims against the DOC are barred in federal court. Specifically, defendants assert that "neither states nor state officials acting in their official capacities are subject to suits under 42 U.S.C. § 1983 because they are not persons within the meaning of § 1983," and this rationale "applies equally to state agencies such as the Washington State DOC." Dkt. 81 at 7. Moreover, plaintiff's damages claims against the DOC, whether under federal or state law, are barred by the Eleventh Amendment, which bars a citizen from suing a state in federal court without the state's consent. *See id.*

The Court finds that the defendants are entitled to summary judgment in their favor with respect to plaintiff's § 1983 claim against the DOC. 42 U.S.C. § 1983 applies to the actions of "persons" acting under color of state law. The DOC is not "a person" for purposes of a § 1983 civil rights action. A "person" subject to suit under § 1983 encompasses state and local officials sued in their personal capacities, municipal entities, and municipal officials sued in an official capacity. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Thus, the undersigned agrees with the defendants that the DOC is a state agency that is not a legal entity capable of being sued under § 1983.

Moreover, the Eleventh Amendment bars citizens from bringing lawsuits against a state in federal court without the state's consent. *See Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This prohibition extends to suits against state agencies, such as the DOC. *See*

---

[4] Although plaintiff references the Americans with Disabilities Act for the first time in his response to defendants' summary judgment motion, the Court notes that plaintiff has failed to allege any facts showing that the DOC discriminated against or denied services to plaintiff based upon his disabilities.

*Brown v. Cal. Dep't of Corr.,* 554 F.3d 747, 752 (9th Cir. 2009) (affirming dismissal of state

Department of Corrections as a state agency entitled to Eleventh Amendment immunity) (citing

*Dittman v. California,* 191 F.3d 1020, 1025 (9th Cir. 1999) ("[A]gencies of the state are immune

[under the Eleventh Amendment] from private damage actions or suits for injunctive relief

brought in federal court.")). Thus, in the absence of a valid congressional override or state action

expressly waiving Eleventh Amendment immunity, the Eleventh Amendment has consistently

been applied to bar suits for damages against state agencies like the DOC in federal court. *See*

*Quern v. Jordan*, 440 U.S. 332, 338-40 (1979).

Accordingly, the DOC, as a state entity, is not subject to suits for damages under § 1983

or the Eleventh Amendment. The Court therefore recommends that defendants' motion for

summary judgment on plaintiff's claims against the DOC be GRANTED.

C.     Plaintiff Has Not Satisfied the PLRA's Exhaustion Requirement with Respect to
       his Claims Against Defendant Lynema

In his complaint, plaintiff alleges that he was still experiencing back pain from two prior

back surgeries upon his arrival at the WCC on October 15, 2002. *See* Dkt. 6 at 4. According to

plaintiff, when Nurse Lynema performed his intake examination at WCC, plaintiff advised

Lynema of his surgeries and asked her "to contact his doctors and obtain his charts. Lynema

[had] the plaintiff sign a waiver to have his medical records sent to WCC from Dr. McCallum,

the plaintiff's personal doctor." *Id*. at 5. Plaintiff asserts that Nurse Lynema then prescribed him

aspirin and ibuprofen without contacting his physician, but he could not take the aspirin "because

of the serious abdominal pain it caused him." *Id*. As a result of the medications prescribed by

Nurse Lynema, combined with additional medications prescribed by other health care providers

at WCC, plaintiff asserts that he became "mortally sick" in November 2002. *Id.*

The defendants contend that although plaintiff filed many prison grievances since late 2003 alleging inadequate health care, it is undisputed that plaintiff did not file a prison grievance concerning the health care he received from Nurse Lynema at WCC in late 2002. *See* Dkt. 81 at 9. *See also id.*, Ex. 1 (Frederick Decl.). As a result, the defendants assert that plaintiff's claim is barred by RLUIPA, or alternatively, the applicable statute of limitations. *See* Dkt. 81 at 8-10.

As stated by the Prison Litigation Reform Act ("PLRA"): "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). *See also Jones v. Bock*, 549 U.S. 199, 211-12 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The PLRA does not define "prison conditions," but the Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

Exhaustion under the PLRA must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In order to properly exhaust, a prisoner must comply with a prison's grievance procedures. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. This includes "compliance with [a prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. *Accord Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue.").

The Court finds that the plaintiff has failed to present any evidence that he exhausted his administrative remedies in the DOC's grievance system with respect to his claims against defendant Lynema. Here, defendants have presented evidence that plaintiff was "well aware of the grievance system in the DOC as he has filed many grievances during his incarceration, some of which have been appealed." Dkt. 81, Ex. 1 at 3 (Frederick Decl.). Specifically, plaintiff has filed approximately 35 complaints dating back to November 2003, most of which concerned the medical care he has received while in DOC custody. *See id.* However, plaintiff did not file any grievances concerning "his medical care at WCC in late 2002 or against Nurse 'Lynema,' even though complaints about medical care are grievable issues" under DOC policy. *Id*. at 4.[5] In his response to the defendants' summary judgment motion, however, plaintiff does not address this evidence.

Thus, the Court concludes that plaintiff has failed to exhaust "such administrative remedies as are available" against defendant Lynema, or regarding the medical care he received at WCC in 2002. These claims should therefore be dismissed. *See Jones*, 549 U.S. at 211-12. As a result, it is unnecessary for the Court to address the defendants' alternative argument that these claims were time-barred by the three-year statute of limitations. *See* Dkt. 81 at 9-10.

D. <u>Plaintiff's Eighth Amendment Rights Were Not Violated By Defendants Barnes, Kenney, Champoux, and Cristman</u>

1. *Medical Mistreatment: Deliberate Indifference to Serious Medical Needs*

To make out a prima facie case against an individual state official pursuant to § 1983, a plaintiff must show that the conduct complained of was committed by a person acting under

---

[5] Defendants assert that "[e]ven if Mr. Carper mentioned his medical care at WCC or his care from Nurse Lynema in the many medical grievances he filed at MCC beginning in November 2003, these grievances would be properly rejected as being both untimely and filed with the wrong institution." *Id.*

color of state law, and this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)). The rights of pretrial detainees regarding medical care arise under the due process clause, rather than the Eighth Amendment. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (citing *Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983)). However, "with regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'" *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002). Thus, an Eighth Amendment analysis is appropriate to analyze whether plaintiff's federal due process rights were violated in this case.

A claim of alleged medical mistreatment in violation of the Eighth Amendment requires an inmate to allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). A prison official may be held liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). An inmate alleging an Eighth Amendment violation must satisfy a two-part test and prove that: (1) the deprivation was, objectively, "sufficiently serious"; and (2) the prison officials acted with a "'sufficiently culpable state of mind.'" *Id.* at 834 (cited sources omitted). The latter subjective showing requires plaintiff to prove that (a) an official was aware of facts from which he could have inferred that a substantial risk of serious harm existed, and (b) that the official in fact drew the inference. *See id.* at 837. Deliberate indifference may be found where prison officials "deny, delay or intentionally interfere with medical treatment, or it may be shown by the

way in which prison physicians provide medical care." *Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir. 1988). The indifference, however, must be substantial; inadequate treatment due to negligence, inadvertence or differences in judgment between an inmate and medical personnel do not rise to the level of a constitutional violation. *See id.; Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989). Prison officials may be free from liability if they "responded reasonably" to a known risk; a dispute, in hindsight, over the existence of arguably superior alternatives does not raise a triable issue of fact as to whether the defendants were deliberately indifferent. *See Farmer*, 511 U.S. at 844.

In his complaint, plaintiff presents the following factual assertions regarding the care he received during his incarceration at MCC from the remaining defendants in this action, PA Barnes, Dr. Kenney, Dr. Champoux, and PA Cristman. *See* Dkt. 6. As discussed above, the defendants argue that plaintiff's assertions in his complaint are insufficient to prove that they acted with deliberate indifference to plaintiff's serious medical needs, or in violation of the accepted standards of medical care in Washington. *See* Dkt. 81 at 10-13.

2. *PA Patrick Barnes*

Plaintiff contends that PA Barnes, who appears to have been plaintiff's primary medical provider at MCC, consistently prescribed improper medications or treatments, which exacerbated plaintiff's abdominal pain and back pain. Dkt. 6 at 12. Specifically, the drugs prescribed by PA Barnes for plaintiff included Ibuprofen, Naptroxen, Zantac, Prelosec, and aspirin. *See id*. at 9-10. Plaintiff alleges that these medications gave him extreme abdominal pain "to the point he blacks out." *Id*. at 9. When plaintiff slipped and fell and injured his back on two occasions, Dr. Barnes also prescribed oral medications or epidural injections to treat plaintiff's pain. *See id*. at 9-10. In addition, plaintiff asserts that he was wrongly denied treatment by PA Barnes from

November 12, 2002, the date that plaintiff was transferred from the WCC to MCC, until January 2, 2003, although plaintiff admits that he missed his December 2002 appointment with PA Barnes due to plaintiff's return to Whatcom County for trial and other court proceedings. *See id.* at 6-7.

PA Barnes treated plaintiff for a variety of ailments during his incarceration. Specifically, after plaintiff was examined by Dr. Champoux for his back pain in May 2003, PA Barnes "began a plan of management which included [anti-inflammatory] medications with plaintiff doing daily stretching." *Id.* at 9. When plaintiff informed PA Barnes in July 2003 of his continuing pain and heartburn on this regimen, PA Barnes advised plaintiff to stop taking the medications. *See id.* When plaintiff informed PA Barnes in August 2003 that he was still experiencing pain in his back, PA Barnes referred plaintiff to Dr. Champoux for an orthopedic evaluation. *See id.* at 10. In response to plaintiff's hypoglycemia, PA Barnes also counseled plaintiff regarding his dietary needs. *See id.* Finally, PA Barnes ordered x-rays and gastroenterology and radiology treatments for plaintiff's epigastrium and abdominal pain in March 2004, several months before plaintiff's August 2004 surgery at Valley General Hospital. *See id.* at 11-12.

3.  *Dr. John David Kenney*

Dr. Kenney is currently employed as the Washington DOC Medical Director at Large. *See* Dkt. 81, Ex. 2 (Kenney Decl.). He served as the Medical Director at MCC from March 2001 until 2007, and the Health Care manager II at MCC from October 2007 to March 2009. *See id.* In the complaint, plaintiff contends that after he was examined by Dr. Kenney, the medical review committee at MCC approved an orthopedic evaluation by Dr. Champoux. *See* Dkt. 6 at 7-8. In addition, plaintiff asserts that Dr. Kenney responded to his emergency sick call for gas

bloating on January 2, 2004, and prescribed Liticane and Malox. *See id.* at 11. Aside from his

general allegations regarding the insufficient care he received at MCC, plaintiff does not identify

any specific conduct by Dr. Kenney that allegedly caused him harm.

### 4. *Dr. James Champoux*

Plaintiff alleges in his complaint that PA Barnes referred plaintiff to Dr. Champoux for

an orthopedic evaluation in January 2003. *See* Dkt. 6 at 7. Plaintiff asserts that "[f]ollowing the

examination by Dr. Champoux, an approximate two-month period passed during which nothing

was done by medical staff to alleviate [his] pain." *Id.* at 8. On March 24, 2003, a diagnostic

imaging report was completed by medical staff for Dr. Champoux. *See id.* However, "between

March 24 and May 16, 2003, plaintiff's back pain began to increase again . . . he was in such

pain that he was having difficulty sleeping." *Id.* at 9. On May 16, 2003, Dr. Champoux finally

reviewed the DIR report, and advised the PAs at MCC to prescribe plaintiff anti-inflammatory

medications. *See id.* at 9.

Defendants respond that during plaintiff's incarceration, "Dr. Champoux treated Mr.

Carper on many occasions and successfully performed two surgeries to correct Mr. Carper's

hammer toes." Dkt. 81, Ex. 1 at 4. Plaintiff does not identify any specific conduct by Dr.

Kenney that allegedly caused plaintiff harm.

### 5. *PA Tim Cristman*

Plaintiff asserts that PA Cristman, along with the other defendants, "failed to determine

the effect one drug would have on another, and failed to follow other doctors' orders in treating

plaintiff's serious medical needs, causing plaintiff to suffer adverse medical effects, escalating

the pain and suffering plaintiff was already experiencing, and [evincing] deliberate[]

indifferen[ce] to plaintiff's serious medical needs[.]" Dkt. 6 at 18. In the complaint, however,

plaintiff does not allege any specific facts concerning the treatment he received from PA Christmas at MCC.

6.  *Plaintiff Has Failed to Prove That Defendants Barnes, Kenny, Champoux, or Cristman Acted with Deliberate Indifference to His Serious Medical Needs*

This Court, having reviewed all of the materials presented by the parties, concludes that the record does not establish that the defendants were deliberately indifferent to plaintiff's serious medical needs. Specifically, plaintiff has not provided any evidence to support his assertion that the defendants "failed to determine the effect one drug would have on another, and failed to follow other doctors' orders in treating plaintiff's serious medical needs, causing plaintiff to suffer adverse medical effects, [and] escalating [plaintiff's] pain and suffering[.]" Dkt. 6 at 18. At most, plaintiff's contentions concerning the care he received from the defendants amounts to no more than a difference of opinion regarding the care that plaintiff should have been provided for his various ailments. As discussed above, however, it is well established that differing opinions on medical treatment do not amount to a violation under the Eighth Amendment. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). Although plaintiff may believe that he should have been afforded surgery at an earlier date, or that he should have been provided less conservative treatment in response to his symptoms, plaintiff makes no showing that (1) the course of treatment chosen by any of the defendants in this case was medically unacceptable under the circumstances, or that (2) the defendants' decisions regarding the course of treatment were made in conscious disregard of an excessive risk to plaintiff's health. *See id.*

Specifically, plaintiff's contention that Dr. Freidrich filed a report on March 19, 2004, concluding that the "medications prescribed to plaintiff by defendants, including prescriptions

for Naprosyn, and Prilosec, in conjunction with NSAIDS, caused plaintiff to suffer duodenal ulcers," is incorrect. Dkt. 6 at 13. As the evidence provided by the defendants demonstrates, a gastroenterologist and internist named Dr. McDonnell actually wrote the March 19, 2004 letter to PA Barnes, commenting that if plaintiff's duodenal ulcer and gastric outlet obstruction were caused by the non-steroidal anti-inflammatory drugs he was taking, then stopping plaintiff's Naprosyn and Prilosec "should heal [them] very nicely[.]" Dkt. 81, Ex. 2, Att. B. The Court agrees with the defendants that this statement by Dr. McDonnel was not a finding that plaintiff's ulcers were, in fact, caused by these medications. Furthermore, plaintiff's condition actually did not resolve satisfactorily with this conservative treatment, and therefore plaintiff underwent corrective surgery in August 2004. *See* Dkt. 81, Ex. 2 at 2 (Kenney Decl.)

Even if the treatment provided by the defendants did cause or exacerbate plaintiff's conditions, however, plaintiff has provided no evidence that this treatment by defendants was improper under the circumstances. To the contrary, Dr. Kenney testified in his declaration that "[t]he potential to cause an ulcer, such as the ulcer Mr. Carper had, is a well appreciated potential side effect of NSAID treatment. This does not mean that prescribing NSAIDS for Mr. Carper was inappropriate as most prescribed medications can have unintended and unfortunate side effects," which providers must weigh "against potential benefit when any medication is prescribed." *Id.* at 3. The record also reflects that the defendants monitored plaintiff's symptoms, and adjusted his medications or referred him to outside providers for treatment whenever necessary.

Finally, even if plaintiff established that the defendants' chosen course of treatment was medically inappropriate, plaintiff has not provided any evidence that the defendants acted with a sufficiently culpable state of mind. *See Farmer*, 511 U.S. at 834. In other words, plaintiff has

not shown that the defendants were aware of facts from which they could have inferred that prescribing plaintiff NSAIDs created a substantial risk of serious harm, or that the defendants actually drew the inference. *See id.* at 837.

Accordingly, plaintiff fails to establish a violation of his Eighth Amendment rights by defendants. *See Jackson*, 90 F.3d at 332. Defendants are therefore entitled to summary judgment with respect to plaintiff's claim that the defendants acted with deliberate indifference to his serious medical needs during his incarceration at MCC between October 2002 and August 2004.

E.    Plaintiff's Medical Malpractice Claims

Plaintiff's final claim is that the defendants' conduct fell below the applicable standard of medical care, thereby causing injury to plaintiff in the form of physical pain and suffering and emotional distress. Specifically, plaintiff asserts that the defendants' conduct also "violated Washington State law governing medical treatment, see, e.g., RCW 7.70.010 and 7.70 et seq." Dkt. 6 at 18. Defendants respond that plaintiff's state law malpractice claims fail "for lack of any competent evidence of violations of the accepted standards of medical care in Washington." Dkt. 81 at 13.

The Supreme Court has stated that federal courts should refrain from exercising their pendent jurisdiction when the federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Because defendants are entitled to summary judgment with respect to plaintiff's federal constitutional claims, plaintiff's state law claim should be dismissed without prejudice.

# V. CONCLUSION

For the reasons discussed above, the Court recommends that the defendants' motion for summary judgment, Dkt. 81, be GRANTED, and this case be DISMISSED with prejudice as to plaintiff's Eighth Amendment claims and without prejudice as to plaintiff's medical malpractice claims. A proposed order accompanies this Report and Recommendation.

DATED this 26th day of July, 2011.

James P. Donohue
_____
JAMES P. DONOHUE
United States Magistrate Judge